Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT
### for the
_Western_ District of _Pennsylvania_

_Civil_ Division

Case No. _21-162 Erie_
(to be filled in by the Clerk's Office)

_Tiffany Oliver_
_Plaintiff(s)_
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

_Erie County, Erie County Department of Health_
_Defendant(s)_
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names.)

Jury Trial: (check one) ☑Yes ☐No

RECEIVED

JUN - 7 2021

CLERK, U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## COMPLAINT FOR A CIVIL CASE

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Tiffany Oliver_
Street Address _817 E. Grandview Blvd, Apt 101_
City and County _Erie, Erie_
State and Zip Code _Pennsylvania, 16504_
Telephone Number _814 671 3882_
E-mail Address _tiffany.oliver3@gmail.com_

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

Name — Erie County

Job or Title *(if known)*

Street Address — 140 W 6th St

City and County — Erie, Erie

State and Zip Code — PA, 16501

Telephone Number

E-mail Address *(if known)*

Defendant No. 2

Name — Erie County Department of Health

Job or Title *(if known)*

Street Address — 310 French St

City and County — Erie, Erie

State and Zip Code — PA, 16501

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question              [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

28 USC §1331, 42 USC §1983-85, Title 11 of ADA 42 USC code § 2000e-5, 42 USC §1988, 42 USC §1882, 29 US code § 794

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual
The plaintiff, *(name)* _____ , is a citizen of the
State of *(name)* _____

b.    If the plaintiff is a corporation
The plaintiff, *(name)* _____ , is incorporated
under the laws of the State of *(name)* _____ ,
and has its principal place of business in the State of *(name)*
_____

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual
The defendant, *(name)* _____ , is a citizen of
the State of *(name)* _____ . Or is a citizen of
*(foreign nation)* _____

b.  If the defendant is a corporation

The defendant,  *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.  The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1) Defendants violated. Plaintiff rights by disallowing Plaintiff to work or receive basic accomodation, compelling Plaintiff to violate religious beleifs, violation of constitutional protections by ignoring Federal & State constitutional rights in favor of a local labor contract ~ rest in Complaint

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Emergency injunctive relief to enjoin Defendants from unlawfully terminating Plaintiff's employment. Compensatory and punitive damages

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     6/17/21

Signature of Plaintiff
Printed Name of Plaintiff     Tiffany Oliver

### B.     For Attorneys

Date of signing:     _____

Signature of Attorney     _____
Printed Name of Attorney     _____
Bar Number     _____
Name of Law Firm     _____
Street Address     _____
State and Zip Code     _____
Telephone Number     _____
E-mail Address     _____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIFFANY OLIVER,
Plaintiff
V.
ERIE COUNTY, et. al.
Defendants

Civil Action No. _____

## COMPLAINT

Plaintiff, an adult individual residing in Erie County, Pennsylvania, alleges the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 42 U.S. Code § 1983, 42 U.S. Code § 1985, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, § 12131,§ 12112, et seq, U.S.C. § 1311 (a) (1), 42 U.S. Code § 1981a,  42 U.S. Code § 2000e–5, 42 U.S. Code § 1988, 42 U.S. Code § 1985,and 29 U.S. Code § 794.
2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claim occurred in this judicial district.

### PARTIES

3. Plaintiff is an adult individual residing at 817 E Grandview Blvd., Apt. 101, Erie, PA,  Erie County, Pennsylvania.
4. Defendant Erie County is a government institution doing business at 140 W 6th St, Erie, PA 16501, Erie County, Pennsylvania.
5. Defendant Erie County Department of Health (ECDOH) is a government institution doing business at 310 French St., Erie, PA 16501, Erie County, Pennsylvania.
6. Defendants are a covered entity as defined under 42 U.S. Code § 12111.
7. Defendants are covered under the Rehabilitation Act of 1973, as Plaintiff's position is fully funded by a federal grant.
8. Defendants are covered persons and/or entities in accordance with 42 U.S. Code § 1983.

### FACTUAL BACKGROUND

9. Plaintiff was hired by Defendant Erie County and Erie County Department of Health as a Disease Investigator, with a start date of December 7th, 2020.
10. During Plaintiff's new hire orientation, Plaintiff was informed of Defendants non-Discrimination policies and anti-harassment policies (Ordinance 35, 2001 (Amended by Ordinance 59, 2004, Ordinance 59, 2004 (Amended by Ordinance 39, 2007) Ordinance 39, 2007 (Amended by Ordinance 128, 2007) Ordinance 128, 2007

(Amended by Ordinance 97, 2016) Ordinance 97, 2016 (Amended by Ordinance 45, 2018)), which includes the following declarations:

> "Be it known to all that the County of Erie does hereby declare its intent to promote the rights and opportunities of all persons to participate in the social, cultural, recreational, and economic life of the County and to assure equal opportunity for all persons concerning employment, housing accommodation and commercial property, education, public accommodations, lending practices, and real estate practices without regard to race, color, disability of the person, religious creed, ancestry, age, familial status, sex, gender identity, sexual orientation, national origin, criminal history or source of income (Preamble)."

> Article II B-C:

> " It is declared to be the public policy of the County of Erie to foster the employment of all individuals in accordance with their fullest capacities, regardless of their race, color, disability of the person, religious creed, ancestry, age, familial status, sex, gender identity, sexual orientation, national origin, criminal history or source of income and to safeguard their right to obtain and hold employment without such discrimination, assure equal opportunities to all individuals, safeguard their rights at places of public accommodation and secure commercial housing regardless of race, color, disability of the person, religious creed, ancestry, age, familial status, sex, gender identity, sexual orientation, national origin, criminal history or source of income is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this ordinance.

> C. This article shall be deemed an exercise of the police powers of the County for the protection of the public welfare, prosperity, health, and peace of the people of Erie County. Nothing in this Ordinance shall be interpreted by any commission, court, or other body as elevating any one group into a protected class, or bestowing any greater right than those afforded individuals or groups under the Constitution of the United States of America, the Constitution of the Commonwealth of Pennsylvania, duly enacted federal laws, and duly enacted laws of the Commonwealth.

> K. The term "discriminate" or "discrimination" means any difference in treatment in hiring, referring for hire, promoting, training, membership in employee or labor organizations, the sale, lease, rental or financing of housing, rendering service in places of public accommodation, because of race, color, familial status, religious creed, ancestry, age, sex, sexual orientation, national origin, disability of the person, the use of guide or support animals because of the disability of the person, or because the person is a handler or trainer of support or guide animals. The term

"discrimination" includes segregation, and also includes any act that is unlawful under this Ordinance.

Defendant Erie County's Home Rule Charter preamble:

"We, the people of the County of Erie, in the Commonwealth of Pennsylvania, do hereby accept the grant of power to self government in accordance with Article IX, Section 2 of the Pennsylvania Constitution and as offered under the Home Rule Charter and Optional Plans Law of 1972, and do ordain and establish thereunder this Home Rule Charter. ***To the maximum extent consistent with the Constitution of the United States of America, the Constitution and general laws of the Commonwealth of Pennsylvania*** and the legal rights and powers of cities, townships, boroughs and school districts, we do confer by this Charter, upon the government of the County of Erie, the following powers, subject to certain restrictions, and prescribe for it the following governmental structure, offices and general procedure."

Defendant Erie County has acknowledged through ordinances and the Home Rule Charter the supremacy of the Constitution of the United states and chose to declare publicly its commitment to prevent and ban all forms of discrimination.

11. Plaintiff, like all other employees at Erie County, was required to sign a Loyalty Oath, which included the following declaration:

"I, _____, do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States and the Constitution of this Commonwealth, and that I will discharge the duties of an employee of Erie County with fidelity (Exhibit A)."

12. Defendants employees are required to pledge and uphold loyalty to the Constitution of the United States and the Commonwealth of Pennsylvania at all times.

13. The Loyalty Oath demonstrates all employees know what the Federal and State Constitution are and that it would be a violation of employment to knowingly, intentionally, or negligently violate either Constitution in any manner.

14. Plaintiff was informed of the functions of the position before hiring.

15. The job description (Exhibit B) did not include requirements to conceal information from the public, to knowingly lie to the public, or to deprive the public or employees of Federal and State Constitutional rights.

16. The job description nor orientation included information that COVID-19 mitigation policies would not be followed in the workplace.

17. At all times during the hiring process, Plaintiff was told by Defendants that COVID-19 mitigation measures and non-discrimination policies would be followed and enforced.

18. Plaintiff was under the belief at all times during employment that Defendants would comply with anti-discrimination policies.

19. Plaintiff, throughout the course of employment, was ordered by Supervisors at the Erie County Department of Health to violate COVID-19 guidelines set forth by the Centers for Disease Control (CDC) and Pennsylvania Department of Health (PA DOH), including denying contacts and cases the right to obtain a second PCR test to shorten quarantine

and isolation times (a change made on December 4, 2020
(https://www.health.pa.gov/topics/Documents/HAN/2020-PAHAN-538-12-4-ALT%20-%2
0Updated%20Quarantine%20Recommendations%20for%20Persons%20Exposed%20to
%20COVID-19.pdf).

20. Supervisor Jane Doe instructed Plaintiff to violate CDC and PA DOH guidelines that
allowed individuals who test positive for COVID-19 to "test out" of quarantine, offering to
be the "mean nurse" and speak to the case Plaintiff was assigned to ensure the case did
not leave their residence and obtain a second PCR test.

21. Supervisor Jane Doe denigrated the case's belief that the individual had a
"false-positive" PCR test, which Supervisor Jane Doe stated was impossible and an
invalid reason for allowing the case to procure a second PCR COVID-19 test.

22.  Jane Doe, who previously worked as a nurse, sought to deny the case a right based on
a position that conflicts science and medical knowledge, as no medical test is 100%
accurate.

23. Defendant ECDOH refused, at all times, to enforce COVID-19 mitigation guidelines in
the office.

24. Defendant ECDOH's office did not allow for social distancing of at least six feet in
numerous shared office spaces and in shared hallways (ie, if two individuals were
walking in opposite directions in the hallway, social distancing could not be obtained).

25. Defendant ECDOH at no time enforced Defendant Erie County's policy of mandatory
temperature checks before work shifts.

26. Defendant ECDOH allowed employees to touch shared surfaces, such as door knobs,
without sanitizing hands before and after touching surfaces, in direct violation of internal
and external policies (Erie County's Environmental Department informed Defendants of
COVID-19 mitigation policies).

27. Plaintiff was threatened by Defendant Erie County's Epidemiologist (Jeff Quirk) for
constructing charts and tables outlining the location categories of COVID-19 outbreaks
and sharing this data with the ECDOH via a virtual meeting and internal emails.

28. Plaintiff shared these charts internally during a virtual meeting with coworkers to help
demonstrate the problem areas for outbreaks and to help guide future policy and
enforcement decisions, as nearly all outbreaks in Erie County (>90%) occurred in
long-term care facilities and Plaintiff was emotionally disturbed by the significant death
toll at such facilities.

29. The above meeting may have been recorded by the ECDOH.

30. The Epidemiologist called Plaintiff during work hours and stated that Plaintiff "needed to
be careful" about sharing outbreak data internally with employees because such data
could end up in the hands of the public, and "Kathy (Dahlkemper, Erie County Executive)
is very careful" about what information is "shared with the public."

31. The information shared internally was not dangerous, as it simply showed the number of
outbreaks in specific locations (long term care facilities, schools, workplace settings,
etc;), which was central to ECDOH's job to protect the public and was beneficial to the
public at large who have a right to life (ie, information about dangerous areas being
withheld from the public limited the public's ability to protect their life under the First
Amendment of the Federal Constitution).

32. The data directly conflicted with ECDOH COVID-19 mitigation policies placed upon the public at large, as venues with historically low incidences of outbreaks (restaurants, bars, churches, and fitness facilities) were subject to more stringent mitigation policies than venues with historically significant numbers of outbreaks (long term care facilities).

33. The data covered the period of March 2020 until mid-late December 2020.

34. The lack of data supporting shutdowns of churches violated the public's First Amendment rights to worship.

35. The lack of data supporting shutdowns of bars violated the public's right to freedom of assembly and association and owners of those venues from accessing and using private property.

36. The lack of data supporting shutdowns of fitness centers impacted public health, as obesity was a major contributing factor to COVID-19 mortality and restricting exercise increased an individuals risk of dying from COVID-19.

37. Defendant's choice for an office space was a former warehouse (310 French St.,Erie, PA 16504) to house the Disease Investigators and Contact Tracers, which results in employees being able to hear confidential and private phone calls made in neighboring offices.

38. Contacts and cases are not informed their conversations are audible to multiple people or that there is the potential for the phone calls to be recorded, as virtual meetings throughout the workday were recorded (meaning a phone call in a neighboring office could be heard in a neighboring office during a Zoom meeting that was being recorded).

39. Many employees chose to use the speakerphone feature during calls, which created a real and substantial risk of causing violations to Pennsylvania Wiretapping laws and violations of federal and state privacy laws.

40. That risk violated the public's constitutional right to privacy.

41. Plaintiff mentioned these risks and informed both Supervisors that phone calls in neighboring offices were audible and could lead to inadvertent recording of calls.

42. No changes were made, which resulted in Defendants employees violating their Loyalty Oath by actively allowing potential crimes and deprivation of rights of the public to occur.

43. Defendant ECDOH was at all times aware of mass deaths in long term care facilities but did not enforce isolation and quarantine within these facilities.

44. The reasoning provided to Plaintiff was that ECDOH lacked "jurisdiction" to enforce isolation and quarantine in long-term care facilities despite ECDOH having the empowerment under local and state law to compel compliance (Disease Prevention and Control Act of 1955, § 1.30, at 1-2 & § 1.40).

45. The failure to act undoubtedly resulted in mass casualties in long term care facilities, depriving the public of the right to life.

46. On December 4th, 2020 (emails sent approximately at 10:11 AM and 10:39 AM), Defendants engaged in a chain email involving the former President Judge of Erie County, the County Executive, the Erie County Prison Warden, and ECDOH in which an allegation by a Public Defender of a significant COVID-19 outbreak in the Erie County Prison was discussed.

47. The allegation was dismissed without investigation based on the word of the warden, the allegation was a rumor.

48. Defendants were complicit with the word of the jail warden and performed no investigation, placing the entire population of the prison, including prison employees and their families, at risk for death and serious bodily injury.

49. Defendant ECDOH insisted that Plaintiff and all employees recommend the vaccine before receiving confirmation from the CDC and PA DOH about whether individuals previously infected with COVID-19 should get vaccinated (multiple staff at ECDOH with nursing experience debated this during recorded meetings, as it was not typical to recommend a vaccine for an individual who was previously infected with the disease the vaccine prevents. Some of these meetings were recorded).

50. Multiple employees at the ECDOH discussed infertility as a potential side effect of the available COVID-19 vaccinations.

51. This information was not officially distributed to employees nor members of the public, causing Plaintiff to be troubled by the potential side-effects and unclear as to whether it was morally right to not inform contacts and cases of the office rumor of potential inferitifly from the vaccine.

52. Supervisor Jane Doe brought coworkers into Plaintiff's office multiple times, without Plaintiff's consent, standing shoulder-to-shoulder with coworkers, placing Plaintiff at risk for serious bodily harm and explicitly violating the six-foot social distancing rules.

53. Defendant ECDOH engaged in a tour of the office in which Plaintiff worked. Social distancing was ignored and Plaintiff had no ability to protect Plaintiff from potential COVID-19 exposure (COVID-19 cases and exposures were common among Defendants employees).

54. Plaintiff informed Supervisor Jane Doe 2 in early December that Plaintiff had previous pulmonary injuries from a chemical exposure and Plaintiff's significant other was immuno-compromised (therefore both Plaintiff and Plaintiff's significant other were at a high-risk for COVID-19) in the hopes that other employees would begin complying with masking, social distancing, and temperature check requirements. Instead, the culture of violating COVID-19 mitigations continued at all times Plaintiff worked at the office.

55. Plaintiff was under the expectation that Defendants, government entities, would be an example and embodiment of compliance to COVID-19.

56. Plaintiff's conscience was shocked that government entities would not follow the mitigation members they recommended the public and private businesses to follow.

57. Had Plaintiff known Defendants had no intent to comply with COVID-19 mitigation measures, Plaintiff would not have accepted the job offer, as the non-compliance posed a real and significant threat to Plaintiff's physical safety and mental wellbeing.

58. Defendant ECDOH conducted a meeting with Erie County's Environmental Department, which is responsible for COVID-19 mitigation enforcement.

59. The meeting occurred in early December 2020.

60. The meeting covered mitigation measures and the presenter made it abundantly clear what mitigation measures were to be followed in the workplace, meaning coworkers failing to comply were doing so intentionally despite knowing the risk it placed upon others. The presenter enforced these policies in the private sector (businesses, schools, etc;).

61. On January 6th, 2021, Plaintiff experienced cold-like symptoms and in accordance with Defendants COVID-19 mitigation policies, informed Plaintiff's direct Supervisor that Plaintiff would not be attending work.

62. Defendants require employees to stay home if they experience any symptoms of COVID-19.

63. On January 7th, 2021, Plaintiff's Supervisor compelled Plaintiff to attend a meeting with a second Supervisor in the conference room.

64. Plaintiff's Supervisor Jane Doe 2 falsely accused Plaintiff of "no-showing" for work.

65. During the meeting, Supervisor Jane Doe 2's email notifications were visible on one of the 65' Smart TV in the conference room, fully visible to all individuals in the room.

66. An email notification regarding a verbal/written warning about Plaintiff's alleged "no show" was publicly visible.

67. This meant Plaintiff's confidential employment information was wrongfully shared with coworkers.

68. After berating Plaintiff about "no-showing" for work, Plaintiff informed Supervisor Jane Doe 2 that Plaintiff emailed Jane Doe 2 on January 7th, 2021, via email, about experiencing cold-like symptoms and staying home.

69. Supervisor Jane Doe and Jane Doe 2 proceeded to interrogate Plaintiff about why Plaintiff did not go to work, with Plaintiff consistently stating the absence was in full compliance with Defendant Erie County's policy of workers remaining home if they experience potential COVID-19 symptoms.

70. Both supervisors demanded to know whether Plaintiff went to the doctor or received a PCR COVID-19 test, which directly violated Plaintiff's right to privacy.

71. Both supervisors have worked as nurses, meaning they knew asking private health information in this manner was in conflict with state and federal laws.

72. Following the public humiliation caused by Supervisor Jane Doe and Supervisor Jane Doe 2, Plaintiff experienced a prolonged panic attack at work.

73. Plaintiff began experiencing slurred speech, which is a symptom related to Plaintiff's disabilities (Chronic PTSD, Conversion Disorder).

74. Plaintiff immediately emailed Human Resources from Plaintiff's work email on January 7th, 2021 following the meeting with Supervisors Jane Doe and Jane Doe 2, as Plaintiff believed Plaintiff was a victim of impermissible bullying and harassing behavior and wanted to report the issue with Human Resources, in accordant with Defendants Employee Handbook.

75. Plaintiff informed Supervisor Jane Doe 2 in writing on January 7th, 2021 that Plaintiff planned to receive medical and/or inpatient treatment for Plaintiff's disability.

76. Supervisor Jane Doe 2 responded that Plaintiff could "take all the time" Plaintiff needed.

77. Plaintiff received emergency treatment from St. Vincent's Hospital on/around January 8th, 2021, as the panic attack induced by Defendants on January 7th, 2021 failed to subside.

78. Throughout January 8th, 2021 to present, Plaintiff has attempted to return to work by requesting a reasonable accommodation.

79. The only accommodation Plaintiff requested was to work remotely, which multiple employees in the ECDOH and Erie County are granted without needing to formally request a disability accommodation.

80. Individuals with the same job as Plaintiff are permitted to work remotely.

81. Work equipment consists of laptops and cell phones, meaning the work equipment can easily be used at Plaintiff's residence.

82. Remote work would better protect the privacy of case's and contacts, as it would eliminate the potential for unlawful recordings and unidentified parties hearing the calls.

83. Plaintiff communicated with two individuals from Defendant Erie County, Amanda Iadeluca and Tyler VanDyke, at least 20 times via phone and email between January 8th, 2021 and March 11th, 2021.

84. Plaintiff communicated with Supervisor Jane Doe 2 on a weekly basis from January 8th, 2021 until March 11th, 2021.

85. Iadeluca and VanDyke requested Plaintiff complete an FMLA form in mid-February 2021.

86. Ieledcua is the Interim Director of Human Resources.

87. Defendant Erie County's Home Rule Charter (Article V, section 4) requires Defendant Erie County to have a Director of Personnel.

88. The Director of Personnel is not a position Defendant Erie County has, but it is more likely than not Iadeluca as Director of Human Services is Defendant Erie County's Director of Personnel.

89. The Director of Personnel, under Article V, Section C, states that "The Director of Personnel shall perform personnel duties and shall exercise general supervision over and administer the personnel program for the county."

90. Defendant Erie County using the title Director of Human Resources instead of Director of Personnel violates Defendant Erie County's Home Rule Charter and is a clear attempt to confuse the public and employees (Plaintiff has attempted to locate the Director of Personnel to escalate Plaintiffs issue, only to find Iadeluca is the highest ranking member of Human Resources and Erie County does not have a "Director of Personnel." Defendant Erie County has not updated the Home Rule Charter to change the title of Director of Personnel to Director of Human Resources)

91. Iadeluca is empowered to administer the personnel program for Defendants, empowering her to create and enforce official and unofficial municipal/local policy.

92. Defendants agreed to provide Plaintiff unpaid time off under the FMLA.

93. Defendants were aware of Plaintiff's speech difficulties and disability in January 2021.

94. Plaintiff's symptoms include slurred and stuttered speech, making it difficult to engage in verbal conversations if the other party is unwilling to exhibit patience and allow Plaintiff enough time to complete sentences.

95. Iadeluca and VanDyke proceeded to call Plaintiff on a near weekly basis, primarily to inquire about the FMLA form, between mid-February 2021 and March 11th, 2021.

96. At all times, Defendants refused to accommodate Plaintiff's disability and permit non-verbal communication.

97. Plaintiff informed Defendants that stress was a major trigger for Plaintiff's symptoms and repeatedly requested that they limit verbal communication to an as-needed basis (ie, not

114.    The deputies stated they were performing a "welfare check" because "nobody" at Plaintiff's employer "heard from" Plaintiff since January 7th, 2021, which conflicts with reality, phone records, and email records.

115.    The deputies asked Plaintiff why Plaintiff was not at work, which violated Plaintiff's right to not share private medical information with Defendants.

116.    One deputy kept his right hand on his pistol during the entire encounter.

117.    During the entire encounter, Plaintiff was in a defenseless position with Plaintiff's back against the front door.

118.    Plaintiff is a petite female and there is no plausible reason for an average sized male deputy to feel threatened by Plaintiff to such a degree as to keep a hand on his pistol (which signifies the deputy was prepared to use lethal force against an unarmed, disabled, and petite female).

119.    When the encounter ended, one deputy told Plaintiff that Plaintiff "needed" to get back to work.

120.    Plaintiff felt compelled under threat of potential harm to share medical information that Defendants and the Erie County Sheriff's were not entitled to. The information was shared by Plaintiff under a perceived threat in an involuntary nature under coercion.

121.    The encounter has left Plaintiff traumatized, as anytime an individual knocks on Plaintiff's door, Plaintiff experiences flashbacks to the conflict with the deputies.

122.    Plaintiff contacted Human Resources and other departments at Erie County to file a complaint involving the "welfare check."

123.    Plaintiff requested information, such as who requested the welfare check, and to speak to Ieladuca and VanDyke's supervisor (County Executive Kathy Dahlkemper).. These requests were denied and rejected.

124.    Plaintiff as a private citizen has an absolute right to engage and contact elected officials.

125.    Plaintiff as an employee has the right to report misconduct by coworkers.

126.    An Erie County employee confirmed via voicemail that the Sheriff's office was sent to conduct a welfare check because Plaintiff allegedly did not speak to anyone at Erie County or Erie County Department of Health since January 7th, 2021.

127.    Plaintiff's union representative (Rick Wilson) defended the actions by Defendant Erie County and refused to assist Plaintiff in lodging a complaint against Defendant Erie County for using law enforcement to intimate and harass an employee on FMLA leave.

128.    Phone logs and emails demonstrate Plaintiff was in constant contact during that time period with Defendants.

129.    No reasonable person could conclude Plaintiff failed to communicate with Defendants considering phone logs and emails show at least 40 instances of direct communication between Plaintiff and Defendants between January 8th, 2021 and March 11th, 2021.

130.    Plaintiff asked Ladeulca and VanDyke multiple times after March 11th, 2021 to communicate with a different county employee regarding Plaintiff's time off, as both individuals engaged in a course of conduct with the sole intent to harass, intimidate, denigrate, demean, shame, injure, distress, traumatize, and humiliate Plaintiff, knowing these behaviors aggravated Plaintiff's disability and prolonged Plaintiff's recovery time.

131.    Plaintiff had at least 15 paid days off when Plaintiff took FMLA leave.

132.    Ladeluca refused at all times to allow Plaintiff to use those paid days off, forcing Plaintiff to rely on an emergency rent program to pay rent (Exhibit E).

133.    Plaintiff is entitled to utilize paid days off while on unpaid leave, as paid days off available to Plaintiff in the payroll system include "sick days."

134.    Plaintiff previously used a paid sick day on December 16, 2020 (Exhibit F)

135.    Therefore Ledeluca intentionally denied Plaintiff the right to use paid days off and lied to Plaintiff by claiming Plaintiff was not eligible to use paid days off.

136.    Plaintiff is unable to access the payroll system on non-County wifi networks.

137.    This behavior demonstrates Defendants willfully are inducing actual financial harm in addition to emotional and medical injuries.

138.    Plaintiff provided the completed FMLA form to Defendants via email on March 24th, 2021 (Exhibit G).

139.    The FMLA form is not allowed to be used in a retaliatory manner or to be interpreted in any way the Employer wants (ie, the doctor's writing speaks for itself).

140.    The FMLA form completed by the doctor stated Plaintiff had a "history of difficulty verbalizing thoughts, short term memory issues, frequent falls," and to "please provide accommodations."

141.    Defendants agreed to extend Plaintiff's FMLA leave to April 9th, 2021 via email on March 24th, 2021. Plaintiff's status would then be "unpaid leave of absence."

142.    On April 6th, 2021, Defendant Erie County requested that Plaintiff explain necessary accommodations.

143.    Defeneant Erie County sent a letter to Plaintiff's doctor, dated April 6th.

144.    The letter, signed by Ledeluca, clearly stated Plaintiff's accommodation request was limited to working remotely (Exhibit H).

145.    The letter asked Plaintiff's doctor what other accommodations Plaintiff would need, in direct conflict with the request Plaintiff actually made to Defendants.

146.    Defendant Erie County provided April 14th, 2021 as the deadline for Plaintiff to complete accommodation requests.

147.    Defendant Erie County claimed in the April 6th, 2021 email that a release was attached.

148.    A release was not attached.

149.    Plaintiff requested the release on April 12th, 2021.

150.    Defendant Erie County failed to provide the release until April 15th, 2021, after the deadline Defendant Erie County set for the accommodation forms to be returned.

151.    Plaintiff submitted the accommodation form on April 20th, 2021 (Exhibit I).

152.    The only accommodation Plaintiff requested was to work remotely.

153.    The request was not unreasonable, as coworkers with the same job as Plaintiff regularly worked remotely.

154.    The coworker who trained Plaintiff worked remotely while training Plaintiff.

155.    Plaintiff signed a release so Defendants could communicate directly with Plaintiff's medical provider.

156.    On May 5th, 2021, VanDyke emailed Plaintiff about the accommodation form Defendant Erie County requested and stated he sent a request to Plaintiff's doctor's office.

157.    On May 11th, 2021, VanDyke stated to Plaintiff via email he had not yet heard from Plaintiff's doctor.

158.    Plaintiff's doctor's office claims to have attempted to reach Defendant Erie County multiple times.

159.    Ladeluca emailed Plaintiff on June 4, 2021, falsely claiming to have mailed Plaintiff a letter on May 13th, 2021 about the ADA paperwork Plaintiff's doctor was to complete (Exhibit J).

160.    Plaintiff never received a letter in the mail from Defendant Erie County.

161.    Plaintiff's USPS Informed Delivery history from May 13, 2021-May 21st, 2021 shows no pieces of mail were sent to Plaintiff from Defendant Erie County, as alleged by Ladeluca (Exhibit K).

162.    Plaintiff therefore never received written notice required to proceed with termination under the grounds cited by Defendant Erie County, by and through Ladeluca.

163.    Iadeluca stated there would be a meeting at 9:00 am on June 9th, 2021 to discuss Plaintiff's "unexcused" absences, citing regulations from a Collective Bargaining Agreement Plaintiff was never provided, making it a substantial burden for Plaintiff to acquire, read, and understand the entire agreement.

164.    Defendant Erie County's' late day email on Friday, June 4th, 2021 means Plaintiff has only two business days to obtain a copy of the collective bargaining agreement and master it for the June 9th, 2021 meeting, which creates an unfair and unlevel playing field. Plaintiff called Plaintiff's "union" on June 7th, 2021 to acquire the collective bargaining agreement and the "union" has yet to provide it.

165.    Defendant Erie County is well-versed in the collective bargaining agreement while Plaintiff is a novice, creating a substantial advantage to Defendant Erie County since the June 9th, 2021 is based on the collective bargaining agreement instead of the Law of the Land (the Federal constitution, ADA, and Civil Rights Act).

166.    Plaintiff can not, in good faith, rely on Plaintiff's "union" to properly argue points under the collective bargaining agreement because the "union" (AFSCME Council 13) politically and financially supports members of the current Erie County government, making it impossible for the "union" to remain objective (one can not serve two masters).

167.    Plaintiff's "union" has been sued by members for failing to represent members' interests, leaving Plaintiff in an impossible conundrum of needing to master the collective bargaining agreement in two business days or rely on a "union" that serves both the individuals committing the harms upon the Plaintiff and the Plaintiff (which is akin to one lawyer acting as both the prosecutor and defense counsel in the same case).

168.    Collective bargaining agreements do not supersede federal constitutional rights or statutes and do not nullify Plaintiff's federal and state constitutional and statutory protections (Article VI, Paragraph 2 of the United States Constitution).

169.    Had Plaintiff had been allowed access to the payroll system by Defendants, Defendant Erie County could not have alleged Plaintiff had unexcused absences on

June 4th, as Plaintiff's sick, personal, and vacation days could have covered the period between May 21st, 2021 and June 10th, 2021.

170.     Plaintiff was ignorant of such an absence as Defendant Erie County failed to provide any written notice to Plaintiff of the May 21st deadline for the ADA form, nullifying the premise that Plaintiff was absent without an excuse from work.

171.     Plaintiff emailed Defendant ECDOH on April 20th, 2021 to request to return to work (Exhibit L).

172.     The request was forwarded to Plaintiff's supervisor.

173.     Plaintiff never received a response.

174.     Iadeluca stated in the June 4th email she was aware Plaintiff requested to return to work but instructed Plaintiff's Supervisor not to respond because Defendant Erie County needed to receive paperwork before Plaintiff could return to work.

175.     Plaintiff was unaware Plaintiff's Supervisor was instructed not to respond until Iadeluca's June 4th, 2021 email, meaning Plaintiff has been diligently awaiting communication from Plaintiff's Supervisor to return to work since April 20th, 2021 for naught.

176.     Iadeluca intentionally interfered with Plaintiff's attempt to return to work remotely by falsely claiming Plaintiff's accommodation was anything more than a singular request to work remotely and using that false assumption to delay Plaintiff's return to work, creating actual physical, mental, and financial anguish.

177.     Plaintiff's April 20th, 2021 (Exhibit I) email shows that the only accommodation Plaintiff needs/requested is remote work.

178.     Defendant Erie County does not have the right to claim Plaintiff is requesting an accommodation Plaintiff is not requesting (ie, claiming Plaintiff asked for anything more than the right to work remotely).

179.     Plaintiff requested the right to record the meeting on June 9th, 2021, as Plaintiff's disability can cause memory loss (Exhibit G) and the meeting likely will induce trauma.

180.     Iadeluca refused to allow Plaintiff to record the meeting on June 9th, 2021.

181.     Defendant Erie County refused to provide a reasonable accommodation by refusing to allow Plaintiff to record the meeting (Defendants record internal meetings regularly, ECDOH retains shared files accessible to all staff to recordings of meetings).

182.     If it reasonable for non-disabled employees to record meetings, Defendant Erie County is acting in a prejudicial, unfair, and discriminatory manner by denying Plaintiff the right to record the June 9th, 2021 meeting.

183.     Defendant Erie County has sought to weaponize the FMLA form Plaintiff submitted by manipulating the written content of the FMLA form to claim Plaintiff has communication impairments that the Plaintiff does not have.

184.     Defendant Erie County is claiming Plaintiff has trouble communicating, citing the FMLA form (Exhibit M).

185.     In a June 4th, 2021 email, Ieladuca falsely claimed Plaintiff's accommodation request is "multi-faceted," meaning that Ieladuca claimed Plaintiff requested more than one accommodation.

186.     This assertion directly conflicts with the submitted forms and written email communication (Exhibit G, I).

187.    Ieladuca is literate, as exhibited by Ieladuca's ability to communicate through email.

188.    Therefore Ieladuca is knowingly, intentionally, wantonly, and maliciously lying about Plaintiff's request to Plaintiff, thereby violating Plaintiff's disability rights.

189.    Plaintiff has the right to request a reasonable accommodation based on disability and Defendant Erie County is denying the accommodation by falsely claiming Plaintiff made an accommodation request that the Plaintiff did not make.

190.    This means Plaintiff requesting to work remotely is being denied as Ieladuca is insisting Plaintiff "really" made a "multifaceted" request in direct conflict with the forms Plaintiff submitted to Defendant Erie County (Defendant Erie County is not allowed to decide what accommodation Plaintiff requests).

191.    Plaintiff is facing termination on June 9th, 2021 because Defendant Erie County is falsely claiming Plaintiff has such difficulty communicating as to not be able to conduct the functions of the job without evidence and in direct conflict with the FMLA form.

192.    At all times Ieduca, Supervisor Jane Doe, Supervisor Jane Doe 2, and VanDyke were employees of Defendants, which required them to sign a Loyalty Oath to the Federal and State Constitution, which makes them public actors who were aware of their obligation to obey the Federal and Commonwealth of Pennsylvania Constitutions at all times while at work.

193.    11th Amendment protections do not extend to municipal public actors when violating the United States Constitution, the ADA, or Civil Rights Act (*Chisholm v. Georgia (1793)* *[Are States then to enjoy the high priviledge of acting thus eminently wrong, without controul; or does a remedy exist? The love of morality would lead us to with that some check should be found; if the evil, which flows from it, be not too great for the good contemplated. The common law has established a principle, that no prohibitory act shall be without its vindicatory quality; or, in other words, that the infraction of a prohibitory law, although an express penalty be omitted, is still punishable. Government itself would be useless, if a pleasure to obey or transgress with impunity should be substituted in the place of a fanction to its laws.]. Fitzpatrick v. Bitzer, Owen v. City of Independence, 445 U.S. 622, 647--48 (1980),  N. Ins. Co. of N.Y., 547 U.S. at 193 ["only States and arms of the State possess immunity from suits authorized by federal law."].* National Association of the Deaf v. Florida, *Hason v. Medical Board of California, Tennessee v. Lane, 541 U.S. 509 (2004), Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)* making such arguments in a future Motion to Dismiss for Failure to State a claim dilatory in nature to further aggrieved Plaintiff.

194.    Defendants have adopted the Loyalty Oath as an official municipal policy, which expressly requires all employees to follow and abide by the constitution, Defendants violating Plaintiff's constitutional rights violated local and internal municipal policies and Defendants failed to remedy these violations, thereby endorsing the violations of Plaintiffs rights.

195.    Ieladuca enacts official and unofficial policy in her role as Interim Human Resources Director (which is not a recognized position under Erie County's Home Rule charter) and demonstrated by her decision to apply contract law (collective bargaining agreement) instead of the ADA, Civil Rights Act of 1964, Federal Constitution, Rehabilitative Act,

Human Relations Act (Pennsylvania state law), and Commonwealth of Pennsylvania Constitutional protections.

196.    Ialeduca's choice to enact/rely upon provisions of a local contract (AFSME Council 13's collective bargaining agreement with Defendant Erie County) as per the June 4th, 2021 email (Exhibit J) over the protections mentioned in paragraph 190 violates Ialedica's Loyalty Oath with Defendant Erie County, as such application deprives Plaintiff of Fourteenth Amendment equal protection rights, among other protection in paragraph 190.

197.    Defendant Erie County's Home Rule Charter, Article VII is entitled Personnel Administration.

198.    Article VII dictates Defendant Erie County is to crafted and adopt personnel policies, including but not limited to policies regarding disciplinary measures and grievance procedures.

199.    This demonstrates Defendant Erie County, by and through Iedeluca, is violating Plaintiff's rights by claiming a "union" contract has more authority than the Home Rule Charter, in contradiction to Defendant Erie County's ruling documents.

200.    This contradiction demonstrates Defendant Erie County's reliance on a collective bargaining agreement is meant to deprive all employees of federal and state constitutional and statutory rights, which violates Article VI, section 2 of the Federal Constitution and is an attempt to prevent civil claims for constitutional violations.

201.    The cumulative actions taken by Defendants demonstrated a persistent and continual course of conduct to deprive Plaintiff of federally protected rights through bad faith official and unofficial municipal policies (*Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) [it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. If the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly], Monell v New York City Dept. of Social Services [Were 1983 unconstitutional as to local governments, it would have been equally unconstitutional as to state or local, officers [436 U.S. 658, 660] yet the 1871 Congress clearly intended 1983 to apply to such officers and all agreed that such officers could constitutionally be subjected to liability under 1983. The Act also unquestionably was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights. Therefore, without a clear statement in the legislative history, which is not present, there is no justification for excluding municipalities from the "persons" covered by 1983].*

## COUNT I VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

202.    Plaintiff incorporates by reference the averments of Paragraphs 1-201 of the Complaint as if the same were set forth in full.

203.    At all times relevant to this action, the ADA was in full force and effect in the United States.

Ordinance 97, 2016 (Amended by Ordinance 45, 2018)), making it a prejudicial forum as the Human Relations Commision represents the Erie County and Erie County employees filing discrimination claims against Erie County:

> "Article V ERIE HUMAN RELATION COMMISION: POWERS AND DUTIES
>
> A. There is hereby established the Erie County Human Relations Commission. The Commission shall be composed of two bodies: the Enforcement Commission and an Advisory Board (the research and educational arm of the commission). Members of both bodies shall be County residents, selected from a broadly and diverse representative cross-section of the racial, ethnic and economic groups, sympathetic with the principles and purposes of this Ordinance and shall serve without compensation."

232.    No movement has occurred in that filing and Plaintiff is concerned the Human Relations Commission is unable to issue injunctive relief or intervene with Defendants clear attempt to wrongfully terminate Plaintiff.

233.    Plaintiff fears the motivation of Defendant Erie County's attempt to fire Plaintiff based on a contract is to permanently fracture Plaintiff's ability to pursue state-level, as a termination would change the remedies in which Plaintiff can pursue under the Human Relations Act.

234.    Plaintiff filed a complaint against Defendants with the EEOC (interview is scheduled for on/around June 24th).

235.    The EEOC therefore is unable to act to stop the potential unlawful termination of Plaintiff on June 9th, 2021.

236.    Plaintiff's only hope for protections of Plaintiff's rights under the ADA is for This Most Esteemed Court to provide relief through injunctive relief.

WHEREOF, Plaintiff requests injunctive relief to prevent Defendants from terminating Plaintiff's employment, compensatory damages, and any other remedies and/or damages This Most Esteemed Court deems fair and just justice.

## COUNT II COLOR OF LAW ACT

237.    Plaintiff incorporates by reference the averments of Paragraphs 1-236 of the Complaint as if the same were set forth in full.

238.    Defendants are public entities as defined by the Color of Law Act.

239.    Defendants acted individually and in coordination in their capacity as public employees to deprive Plaintiff of federal and state constitutional protections by engaging in a course of conduct that violated Plaintiff's right to privacy, safety, religion, due process, free speech, and equal protection.

240.    Defendant Erie County preempting Plaintiff's federally and state protected rights by enacting a collective bargaining agreement instead of ADA and Human Relations protections and violating Plaintiff's Fourteenth Amendment right to equal protections violate Plaintiff's Fourteenth Amendment rights, First Amendment rights to petition the government for a redress of grievances, and Fifth Amendment right to property.

204.    Plaintiff is an individual with a disability within the meaning of the ADA because Plaintiff has a physical and mental impairment that substantially limits one or more of Plaintiff's major life activities and systems as described herein.

205.    Defendant Erie County is aware of what the ADA is, as they have a webpage dedicated to the legislation (https://eriecountypa.gov/about/contact/americans-with-disabilities/americans-with-disabilities-act/).

206.    Defendants were aware of Plaintiff's disabilities from at least January 8th, 2021.

207.    Plaintiff's Supervisors are nurses, meaning it is reasonable to assume both would understand what PTSD is and that stress aggravates symptoms.

208.    The ADA expressly prohibits, among other things, discrimination on the basis of disability in the the workplace, or reasonable accommodations in the workplace.

209.    Defendants allow multiple employees to work remotely, including Plaintiff's coworker who trained Plaintiff remotely on how to complete calls to cases and contacts.

210.    Defendants, by and through Iadeluca, misrepresented Plaintiff's accommodation request and intentionally used the FMLA form to make it unduly difficult for Plaintiff to pursue a basic accommodation that is afforded to numerous, non-disabled employees performing the same work as Plaintiff.

211.    Iadeluca mentioned the FMLA form content when arguing with Plaintiff via email about Plaintiff requesting to work remotely ("You produced medical paperwork indicating that you would have trouble verbalizing thoughts and communicating with others, a significant and essential part of your job duties as a disease investigator").

212.    Plaintiff's medical provider stated on the FMLA form Plaintiff had a "history of difficulty verbalizing thoughts, issues with short-term memory, falls frequently."

213.    Iadeluca falsely represented that the FMLA form included "trouble...communicating with others."

214.    Iadeluca erroneously represented a history of an issue as a present condition, seemingly misunderstanding that the word "history" refers to past events, not the present nor the future (it is reasonable to assume Iadeluca understands the definition of history).

215.    This misrepresentation has damaged Plaintiff's Professional reputation, as Iadeluca is wrongfully claiming Plaintiff has communication problems that Plaintiff does not have and conflicts with what Plaintiff's medical provider wrote in an FMLA form (the assessment of symptoms occurred on March 24th, 2021, meaning Iadeluca assuming the Plaintiff's symptoms are identical presently to March 24th, 2021 lacks validity).

216.    At no point in the FMLA form does Plaintiff's physician state Plaintiff presently has difficulty communicating or that Plaintiff has a condition that would preclude Plaintiff from performing Plaintiff's job (needing occasional time off *if* symptoms continue or worsen does not equate to stating Plaintiff is *unable* to perform Plaintiff's job).

217.    A delay or trouble verbalizing thoughts does not equate to a communication problem that would reasonably impact Plaintiff's ability to perform Plaintiff's job (Stephen Hawking was able to engage in verbal communication despite being unable to speak).

218.    Iadeluca, in a June 4th, 2021 email claimed "Your request for accommodation was multifaceted and was not limited to working from home."

219.   The accommodation form Plaintiff submitted to Ledeluca on April 20, 2021 made a single accommodation request: "Doing all functions and aspects of the job remotely (from home) to limit stimuli (Exhibit I)."

220.   The flare-ups of symptoms are primarily caused by stimuli that only exist at Plaintiff's office and would not exist at Plaintiff's residence, meaning working remotely would eliminate the most risks of aggravation of Plaintiff's symptoms).

221.   Iadeluca acting on behalf of Defendant Erie County on personal time makes it unclear to the Plaintiff whether Iedeluca is representing Erie County or instead acting as a private citizen (Iadeluca's second email to Plaintiff on June 4th, 2021 was sent at 5:33 pm. Defendant Erie County's bars employees from using personal devices for work related tasks).

222.   Defendant Erie County is using Plaintiff's FMLA documents from March 24th, 2021, which serve to excuse Plaintiff from work and receive unpaid time off, against Plaintiff in a prejudicial manner to justify Defendant Erie County's clear intent to wrongfully and unjustly terminate Plaintiff's employment.

223.   Plaintiff's accommodation request is a separate issue than the FMLA and Defendants do not have a right to use a medical excuse to undermine Plaintiff's accommodation request or to decide *for* the Plaintiff what accommodations Plaintiff is pursuing.

224.   Iadeluca assumed that Plaintiff's stuttering impacts the ability to communicate with members of the public without evidence and such an assumption demonstrates Iadeluca is biased against individuals with disabilities, as she assumes an impairment or disability precludes an individual from overcoming such impairment/disability.

225.   Iadelcua lacks the medical expertise to arbitrarily decide how severe Plaintiff's stuttering is or whether it would prevent Plaintiff from performing calls to cases and contacts.

226.   Iadeluca has not verbally communicated with Plaintiff since April 2021, meaning Ladeluca has no basis for assuming Plaintiff's stuttering or communication problems as of June 4th, 2021 was as severe as when Plaintiff last spoke with Iadeluca.

227.   Iadeluca therefore has no justification to assume Plaintiff is currently experiencing an inability to communicate verbally or difficulty communicating.

228.   Because Defendants have a history of allowing workers to engage in remote work, Plaintiff's remote work request is not an undue burden upon Defendants and the denial/refusal to grant demonstrates, on its face, a violation of the ADA.

229.   Defendant Erie County does not have the right to assume Plaintiff is requesting accommodations other than that which Plaintiff is actually requested.

230.   The allegations by Iadeluca that Plaintiff's doctor's office has not been in communication conflicts with what Plaintiff's doctor's office is claiming and such deception is another attempt to induce intentional distress upon Plaintiff.

231.   Plaintiff filed a complaint with the Erie County Human Relations Commission on May 19th, 2021. Human Relations is a department under the authority of Defendant Erie County (Article V of (Ordinance 35, 2001 (Amended by Ordinance 59, 2004, Ordinance 59, 2004 (Amended by Ordinance 39, 2007) Ordinance 39, 2007 (Amended by Ordinance 128, 2007) Ordinance 128, 2007 (Amended by Ordinance 97, 2016)

241. Plaintiff's devout Orthodox Christain beliefs preclude Plaintiff from lying (Proverbs 6:16-19, Proverbs 12:22 Proverbs 19:9,Colossians 3:9-10, John 8:44, Exodus 20:16, Ephesians 4:25, Revelation 21:8, Leviticus 19:11, Proverbs 24:28, Matthew 15:18-20, Psalm 58:3, Proverbs 26:18-19, Psalm 34:13, 1 Kings 22:21-23, 1 Peter 3:10, Hosea 4:2 ,etc;) or disobeying the laws of Plaintiff's residence (Romans 13:1-7,Titus 3:1, Matthew 22:17-22).

242. Defendants mandated Plaintiff to conceal information from the public, violate CDC and PA DOH COVID-19 quarantine and isolation guidelines, ignore a reputable allegation by an attorney of a COVID-19 outbreak in the Erie County prison (December 4th, 2020 email chain), refuse to allow contacts and cases to "test out" of quarantine, and not pursue remedies to ensure long term care facilities were following isolation and quarantine guidelines.

243. Defendants conspired to use the Sheriff's Department to intimate Plaintiff to return to work and share confidential health information that Defendants were not entitled to under the law through threat of force, violence, and extrajudicial execution.

244. Defendants deprived Plaintiff the right to receive and comply with medical care.

245. Interference with medical care violates Plaintiff's Ninth Amendment unenumerated rights.

246. Interference with medical care by Defendants violated Plaintiff's First Amendment constitutional rights under the Commonwealth of Pennsylvania's constitution and Fifth and Fourteenth Amendment right to due process under the Federal Constitution.

247. Defendants failed to enforce COVID-19 mitigation guidelines, including social distancing, masking, and temperature checks, inside the workplace. Plaintiff was forced into situations in which Plaintiff could not socially distance, meaning Plaintiff was compelled to violate rules and regulations that Plaintiff is religiously obligated to comply with.

248. Defendants refusal to compel compliance within the office to COVID-19 mitigation guidelines violated Plaintiff's Ninth Amendment unenumerated rights and First Amendment rights under the Commonwealth of Pennsylvania's constitution.

249. Defendants compelled Plaintiff to conceal outbreak statistics from the public, which violates the constitutional rights of society as a whole and Plaintiff's First Amendment religious and free speech rights.

250. Defendants created an adversarial workplace culture in which workers were encouraged to "not worry" about HIPAA protections and misguide the public about the safety and efficacy of masks and vaccines (ie, advising the public that x is safe before receiving confirmation from the CDC or PA DOH that x is safe).

251. Defendant ECDOH insisted Plaintiff tell the public that vaccines were completely safe and effective while awaiting direction from the CDC and PA DOH as to whether individuals previously infected with COVID-19 should receive the vaccine, which again forced Plaintiff to violate Plaintiff's religious beliefs and the public's right to information useful to protect their life in order to remain employed.

252. Defendant ECDOH rigorously discussed the effectiveness of vaccines with mutated COVID-19 strains and whether vaccines would be effective (specifically the fundamental differences between the Wuhan and South African COVID-19 strains). Plaintiff provided

Defendant ECDOH with information regarding Five Eyes and NATO allies belief the current vaccines would not be effective against the UK and South African strain verbally and via email in December 2020.

253.    Some of these conversations were recorded by the ECDOH (although there was no announcement at the beginning of the meetings that they were being recorded, violating Pennsylvania Wiretapping laws and employees constitutional rights to be free from unlawful surveillance).

254.    Plaintiff was not allowed to share these valid concerns with cases, contacts, or the public at large, as Plaintiff was instead required to endorse the vaccine and dismiss questions by the public about their effectiveness against mutations (specifically the UK and South African strain).

255.    Plaintiff was encouraged to ignore science (including a BBC article shared with ECDOH employees which stated the South African strain was different enough that the vaccines may not work) and always recommend the vaccines.

256.    Multiple employees (who identify as female) at ECDOH openly discussed their desire to receive the "jab" despite it causing infertility, as they were no longer interested in having children. This caused undue distress upon Plaintiff as Plaintiff is precluded from withholding such information, if true, from innocent members of the public.

257.    Plaintiff's religious views are opposed to involuntary sterilization.

258.    Defendants refusal to allow Plaintiff to share outbreak information with the public violated the rights of the public at large, who have a constitutional entitlement to know how to protect themselves from a lethal pathogen, meaning knowledge of the location of outbreaks is essential for individuals to make choices to protect themselves (for example, if a family is weighing whether to place a loved one in a long term care facility, it is of absolute necessity for that family to know the exact number of outbreaks at long term care facilities and which facilities are experiencing severe outbreaks).

259.    The data showed that there were less than 200 outbreaks at bars, churches, restaurants, and fitness centers in 2020, which meant that Plaintiff was forced to lie to the public when cases and contacts asked about the safety of going to those venues (ie, policies required significant restrictions on those venues and to advise members of the public to avoid them despite a reasonable person concluding the data conflicted with such recommendation).

260.    The public was thereby deprived of property, religious worship, and freedom of association knowingly and wantonly by Defendants, as the data would convince a reasonable person that it was statistically safer to go to a bar or church than to a big-box retailer or work (ie, less likely to contract COVID-19 at a bar or gym than Walmart or an Amazon Warehouse factory).

261.    Plaintiff was informed by Defendant ECDOH that funding for Plaintiff's position was for two years (November-December 2022) but 14 positions would become permanent, meaning there was no possibility of a "return to normal" that Defendants projected to the public before the funding expired.

262.    Defendants planned pandemic response was irrelevant to the vaccination rates or COVID-19 cases.

263. Plaintiff was precluded by Defendants from sharing this information to the public, which Plaintiff was required to serve and protect.

264. Plaintiff's religious beliefs preclude Plaintiff from engaging in democide, genocide, murder, manslaughter, or allowing preventable deaths to occur (Exodus 20:13, 1 John 3:12, Genesis 9:6, Deuteronomy 5:17, John 8:44, Proverbs 6:16-19, James 4:1-17, James 2:11, John 14:15, Exodus 23:7, Revelation 22:15, Numbers 35:31, Jeremiah 7:9, Jeremiah 22:3).

265. Defendant ECDOH knowingly allowed long term care facilities to violate isolation and quarantine requirements, resulting in mass death.

266. Defendant ECDOH claimed to not have jurisdiction to enforce isolation and quarantine in nursing homes despite Plaintiff providing the Executive Director of the ECDOH (Melissa Lyon), via an email, with statutes that empowered Defendant ECDOH to enforce isolation and quarantine in long term care facilities within Erie County (Disease Control of Prevention Act of 1955, § 1.30, at 1-2 & § 1.40).

267. ECDOH did not utilize its authority to enforce COVID-19 mitigation in nursing homes.

268. The ECDOH did nothing to prevent non-essential workers, such as fish tank cleaners, from entering long term care facilities, which resulted in outbreaks and numerous deaths at long term care facilities.

269. The ECDOH was aware that many exposures at schools was the result of the Intermediate Unit and other service providers traveling between schools and student homes.

270. This caused disabled children to be placed at a higher risk of exposure to a lethal pathogen than children who are not disabled, violating their equal protection rights and Defendant Erie County's Loyalty Oath (which is a submission by Defendant Erie County to the United States constitution and federal supremacy).

271. These actions violated Plaintiff's religious beliefs, which places children and disabled as those who warrant the most protection (Matthew 18:10, Psalm 127:3, Psalm 82:3–4, Proverbs 31:9, Luke 14:12-14, Proverbs 24:11

272. These actions violated the rights of the public at large, as disabled children were knowingly allowed to be placed at a higher risk of COVID-19 exposure than non-disabled children, which violates Plaintiff's religious rights and unenumerated rights.

273. Defendants refusal to grant Plaintiff reasonable accommodations that are freely granted to other employees with the same job violates Plaintiff's Fourteenth Amendment equal protection rights.

274. Defendants sending four armed deputies based on a lie to Plaintiff's home violated Plaintiff's due process rights to pursue disability accommodations and to be free from hate crimes.

275. Plaintiff's Fourteenth Amendment rights were violated when Defendants used law enforcement as a method to intimate Plaintiff and extract protected health information from Plaintiff. This diluted Plaintiff's FMLA and ADA process, as the Defendants unlawfully obtained confidential information absent conformity to FMLA and ADA procedures.

276.    VanDykes political views on police and law enforcement violence made the "welfare check" conducted by four armed Sheriff deputies a threat upon Plaintiff and Plaintiff's families life and safety.

WHEREOF, Plaintiff requests injunctive relief to enjoin Defendants from continuing to violate Plaintiff's constitution rights, compensatory and punitive damages, and any and all other relief deemed just by This Court.

## COUNT III REHABILITATION ACT VIOLATIONS

277.    Plaintiff incorporates by reference the averments of Paragraphs 1-276 of the Complaint as if the same were set forth in full.

278.    Defendant ECDOH received a federal grant that was used to fund Plaintiff's position as a Disease Investigator.

279.    Defendant ECDOH is thereby barred from engaging in acts of discrimination.

280.    Defendant ECDOH created policies, both public and private, that compelled employees to lie and deceive the public, which violates religious rights held by numerous religions.

281.    At no time did Defendant ECDOH or Erie County state that Plaintiff would be required to lie, violate local, state and federal law, violate the Federal and Commonwealth of Pennsylvania constitution and COVID-19 mitigation guidelines as a condition of employment.

282.    Defendant ECDOH created a different standard for the public than employees, which caused employees who believed in the threat of COVID-19 to be negligently exposed to the lethal pathogen.

283.    Plaintiff was mandated to recommend all three of those guidelines to members of the public despite Defendants not enforcing those rules upon employees at the workplace. This requirement attacked fundamental religious rights, as employers can not force employees to violate religious beliefs.

284.    Plaintiff was subject to retaliation for requesting time off under the FMLA and reasonable accommodations under the ADA.

285.    Defendants knowingly induced trauma upon Plaintiff, by way of a malicious "welfare check" conducted by four deputies based on a blatant lie to disrupt Plaintiff's medical care and accommodation request.

286.    Defendants knew Plaintiff has PTSD and a reasonable person would know that subjecting Plaintiff to a high-stress situation involving a squad of armed state actors would induce emotional distress.

287.    Defendants refusing to grant Plaintiff's sole accommodation request (to work remotely) while granting that privilege to non-disabled employees is discriminatory and violates Plaintiff's Fourteenth Amendment rights, as well as Plaintiff's rights under the Rehabilitation Act.

WHEREOF, Plaintiff requests injunctive relief to enjoin Defendants from retaliating or terminating Plaintiff, and any and all remedies This Court deems just and fair.

## COUNT IV CONSPIRACY AGAINST RIGHTS

288. Plaintiff incorporates by reference the averments of Paragraphs 1-287 of the Complaint as if the same were set forth in full.

289. Defendants are covered persons and entities under 42 U.S. Code § 1985.

290. Defendants engaged in coordinated behavior with the sole intent to deprive Plaintiff of Plaintiff's constitutional and natural rights to pursue disability accommodations, feel safe in Plaintiff's home, and obtain and comply with medical treatment.

291. Defendant Erie County, by and through group emails involving Human Resources, Amanda Ieladuca, and Tyler VanDyke, conspired to change the accommodation request Plaintiff made.

292. Defendants conspired to send armed state actors to Plaintiff's home in an act to discourage Plaintiff from invoking federal and state constitutional and statutory rights to prevent Defendants from terminating Plaintiff's employment because Plaintiff requested to work remotely.

293. Defendants, by and through Ieladuca and Supervisor Jane Doe 2, conspired to prevent Plaintiff from returning to work, molesting Plaintiff's personal property by restricting Plaintiff's right to earn an income in violation of the ADA, Civil Rights Act, and Federal Fifth and Fourteenth amendment rights and state First Amendment rights.

294. Defendants conspired to injure Plaintiff by engaging in acts of harassment, threats of violence, and intimidation as incorporated in paragraphs 1-285 of This Complaint.

WHEREOF, Plaintiff requests compensatory damages and any and all other relief This Most Esteemed Court deems just and fair.

## COUNT V VIOLATION OF VII OF THE CIVIL RIGHTS ACT

295. Plaintiff incorporates by reference the averments of Paragraphs 1-294 of the Complaint as if the same were set forth in full.

296. Defendants acted to deprive Plaintiff of the right to request and receive a reasonable accommodation based on Plaintiff's disabilities.

297. Defendants impeded Plaintiff's right to collect paid time off because Plaintiff was pursuing a disability accommodation.

298. Defendants intentionally misrepresented Plaintiff's singular accommodation request to work remotely as a means to pursue an unlawful termination of Plaintiff's employment and to restrict Plaintiff's right to work by claiming Plaintiff needed more accommodations than Plaintiff actually requested.

299. Defendants sending armed deputies to interrogate Plaintiff about Plaintiff's disability and medical condition violated Plaintiff's rights under the Civil Rights Act, as Plaintiff has the right to be free from harassment and discrimination for being disabled and requesting a reasonable accomodation and has a multi-racial household.

WHEREOF, Plaintiff requests compensatory damages and any and all other forms of relief deemed just and fair by This Most Esteemed Court.

## COUNT VI INTENTION DISCRIMINATION IN EMPLOYMENT

300.    Plaintiff incorporates by reference the averments of Paragraphs 1-299 of the Complaint as if the same were set forth in full.

301.    Defendants actions constituted an intentional act of discrimination against Plaintiff based on Plaintiff's disability.

302.    Defendants intentionally worsened Plaintiff's symptoms by unreasonable, repetitive, and obsessive communication while Plaintiff was attempting to limit stress in accordance with Plaintiff's medical provider's treatment recommendations.

303.    These actions worsened Plaintiff's disability, which, at all times, Defendants were aware of.

304.    Defendants intentionally refused to allow Plaintiff to collect paid days off.

305.    Plaintiff would have been able to claim these paid days off if Defendants provided Plaintiff with access to Plaintiff's work computer or Erie County's payroll system.

306.    Defendants have misrepresented the content of the FMLA form and Plaintiff's accommodation request with the sole intent of firing Plaintiff and preventing Plaintiff from working because Plaintiff falls under a protected class.

307.    Defendants are claiming Plaintiff is making more than one accommodation request absent justification.

308.    These actions are meant to induce harm upon Plaintiff.

309.    These harms are physical, mental, and financial.

310.    Defendants affording remote work to other employees doing the same job as Plaintiff and allowing other employees with the same experience to use paid sick, personal, and vacation is an intentional act of discrimination against Plaintiff based on Plaitniff's protected class status.

311.    Defendants ignoring Plainitff's protections under the statutes mentioned in This Complaint in favor of a local contract with a "union (AFSCME Council 13)" is intentional discrimination as Defendant Erie County is intentionally providing fewer rights and protections to Plainitff than Plaintiff is entitled to as a citizen of the United States and Commonwealth of Pennsylvania.

WHEREOF, Plaintiff requests compensatory damages and any and all other forms of relief This Most Esteemed Court deems just and fair.

06/06/2021
Date

Tiffany Oliver
Plaintiff
Pro Se
817 E Grandview Blvd.
Apt. 101,
Erie, PA 16504
814-671-3882