IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANY OLIVER,<br>        Plaintiff<br>    v.<br><br>ERIE COUNTY and ERIE COUNTY<br>DEPARTMENT OF HEALTH,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 21-162 Erie<br><br>**District Judge Susan Paradise Baxter** |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

**A.     Relevant Procedural History**

Plaintiff Tiffany Oliver initiated this civil rights by filing a *pro se* complaint against Defendants Erie County and Erie County Department of Health, which was docketed on June 30, 2021, asserting six counts against both Defendants: (1) "Violation of Title II of the Americans with Disabilities Act;" (2) "Color of Law Act;" (3) "Rehabilitation Act Violations;" (4) "Conspiracy Against Rights;" (5) "Violation of VII of the Civil Rights Act;" and (6) "Intentional Discrimination in Employment." [ECF No. 12].

On September 30, 2022, United States Circuit Judge D. Michael Fisher issued a Memorandum Opinion [ECF No. 36] and Order [ECF No. 37] granting Defendants' motion to dismiss the complaint [ECF No. 29]. Specifically, Judge Fisher dismissed Count II of the complaint alleging "Color of Law Act," with prejudice, and dismissed the remainder of the claims without prejudice to Plaintiff's right to file an amended complaint within thirty days to correct the deficiencies noted in the Opinion.

Plaintiff subsequently filed an amended complaint against the same Defendants on

1

November 16, 2022, which is the operative pleading in this case. In her amended complaint, Plaintiff asserts five counts against both Defendants stemming from her brief employment with Erie County as a Disease Investigator/Contact Tracer, which was terminated on June 9, 2021:

- Count I - "Violation of the Americans with Disabilities Act Discriminatory Terms, Conditions, and Privileges of Employment;"

- Count II - "Violation of the Americans with Disabilities Act Discriminatory Criteria and Qualification Standards;"

- Count III – "Violation of the Americans with Disabilities Act Failure to Provide Reasonable Accommodation;"

- Count IV – Violations of the Due Process Protections of the Fourteenth Amendment to the United States Constitution;" and

- Count V – "Conspiracy Against Rights."[1]

Defendants have filed a motion to dismiss Counts II, IV, and V of the amended complaint for failure to state a claim upon which relief may be granted. [ECF No. 45].[2] In response, Plaintiff has filed a 48-page document entitled, "response to motion to dismiss and motion for summary judgment," containing 264 enumerated paragraphs and attaching an additional 122 pages of exhibits [ECF No. 51]. Defendants countered with a motion to strike and/or deny Plaintiff's response [ECF No. 52], and brief in support thereof [ECF No. 53], objecting to the content of Plaintiff's response, characterizing it as "impertinent," "immaterial," and "scandalous," and asking that the Court strike and disregard the response in whole or in part.[3]

---

[1] Plaintiff misidentifies her conspiracy claim as "Count IV;" however it is the fifth count listed in her amended complaint. So, the Court will adopt Defendants' labelling of the claim as "Count V."

[2] Defendants also filed an answer and affirmative defenses to Counts I and III on the same date. [ECF No. 47]

[3] Defendants' motion to strike is well-taken. Plaintiff's response is replete with immaterial arguments, slanderous accusations, and scandalous statements that largely fail to address the arguments raised in Defendants' motion to dismiss. As a result, the Court will grant Defendants' motion to strike [ECF No. 52] and will disregard Plaintiff's

2

This matter is now ripe for consideration.

### B.  Relevant Factual History[4]

Plaintiff was hired by Erie County on or about December 7, 2020, to work as a Disease investigator/Contact Tracer in Erie County's Department of Health. (ECF No. 43, ¶ 15). On January 6, 2021, Plaintiff experienced cold-like symptoms and advised her supervisor that she would not be attending work in accordance with Erie County's COVID-19 mitigation policies. (Id. at ¶ 34). On January 7, 2021, Plaintiff's direct supervisor required Plaintiff to attend a meeting with a second supervisor in a conference room, at which Plaintiff was accused of "no-showing" for work. (Id. at ¶¶ 36-37). As a result of this meeting, Plaintiff experienced a "prolonged panic attack" and began experiencing "slurred speech" related to her alleged disabilities, which Plaintiff describes as "Chronic PTSD, Conversion Disorder." (Id. at ¶¶ 41-42). Plaintiff immediately notified her supervisor (identified as "Jane Doe 2") in writing that she planned to receive medical treatment for her disability, to which the supervisor responded that Plaintiff could take "all the time" she needed. (Id. at ¶¶ 44-45).

On January 8, 2021, Plaintiff received emergency treatment for her panic attack at St. Vincent Health Center, and did not return to work. (Id. at ¶ 46). Defendants agreed to provide unpaid time off under the Family Medical Leave Act ("FMLA") and, in mid-February 2021, asked Plaintiff to complete an FMLA form. (Id. at ¶¶ 52-53). Despite Plaintiff's request that Defendants limit verbal communication with her "to an as-needed basis or speak to Plaintiff's Power of Attorney," due to her stress, Defendants "insisted on speaking with Plaintiff directly at all times between January 2021 and March 11, 2021." (Id. at ¶¶ 60-61). In particular, Plaintiff

---

response and attached exhibits in their entirety.

[4] The statement of facts set forth herein is derived from the pertinent factual allegations of Plaintiff's amended

alleges that, from mid-February 2021 to March 11, 2021, two individuals from Defendant Erie County, Amanda Iadeluca ("Iadeluca") and Tyler VanDyke ("VanDyke") called Plaintiff on a "near weekly basis" to inquire about the FMLA form. (Id. at ¶ 58). Plaintiff alleges further that, between March 9 and March 11, 2021, VanDyke called Plaintiff "at least four times" about the FMLA form and demanded that Plaintiff return the form by the end of the week or she would be terminated. (Id. at ¶¶ 62-63). On March 11, 2021, Plaintiff hung up on VanDyke and, approximately two hours later, four Erie County Sheriff deputies appeared at her door to perform a welfare check because her employer had not heard from her since January 7, 2021. (Id. at ¶¶ 64-65).

Plaintiff emailed the completed FMLA form to Defendants on March 24, 2021, in which Plaintiff's doctor stated that Plaintiff "had a history of difficulty verbalizing thoughts, short term memory issues, frequent falls," and asked that Defendants "please provide accommodations." (Id. at ¶¶ 83-84). Defendants agreed to extend Plaintiff's FMLA leave to April 9, 2021, after which Plaintiff's status would be changed to "unpaid leave of absence." (Id. at ¶ 85).

On April 6, 2021, Defendants sent Plaintiff an email requesting an explanation of necessary accommodations by April 14, 2021. (Id. at ¶¶ 86, 90). Plaintiff submitted an accommodation form on April 20, 2021, requesting that she be allowed to work remotely as her only accommodation. (Id. at ¶¶ 95-96). On May 5, 2021, Defendants emailed Plaintiff to inform her that her accommodation form was forwarded to her doctor's office. (Id. at ¶ 100). On May 11, 2021, Van Dyke informed Plaintiff that he had not yet heard from Plaintiff's doctor, even though the doctor's office indicated that it had attempted to reach Defendants multiple times in late April and early May 2021. (Id. at ¶¶ 101-102).

---

complaint [ECF No. 43], which are accepted as true for purposes of Defendants' motion.

On June 4, 2021, Iadeluca sent an email to Plaintiff claiming to have mailed Plaintiff a letter on May 13, 2021, regarding ADA paperwork Plaintiff's doctor was to complete; however, Plaintiff claims she never received the letter. (Id. at ¶¶ 103-104). Iadeluca further stated that there would be a meeting at 9:00 a.m. on June 9, 2021, to discuss Plaintiff's "unexcused" absences." (Id. at ¶ 106). Plaintiff's employment was ultimately terminated after the meeting of June 9, 2021.

## II. DISCUSSION

### A. Count II – "Violation of the ADA Discriminatory Criteria and Qualification Standards"

Plaintiff asserts that Defendants' alleged conduct constituted discrimination in violation of Title I of the ADA, 42 U.S.A. §§ 12112(a) and (b). First, Plaintiff asserts that Defendants violated 42 U.S.C. § 12112(b)(1), which prohibits an employer from "limiting, segregating, or classifying [an] employee in a way that adversely affects the opportunities or status of such … employee because of the disability of such … employee." Specifically, Plaintiff alleges that Defendants "assumed Plaintiff was unable to complete phone calls without considering the various assistive and adaptive technologies that would allow Plaintiff to verbalize thoughts without a stutter," such as text-to-speech technology. (Id. at ¶¶ 173-175).

Second, Plaintiff claims that Defendants violated 42 U.S.C. § 12112(b)(6), which makes it unlawful for an employer to use qualification standards or other selection criteria "that screen out or tend to screen out an individual with a disability" unless such standards are "shown to be job-related for the position in question and are consistent with business necessity." In particular, Plaintiff asserts that the job advertisement for Plaintiff's position did not state that applicants who required assistive or adaptive technology to perform the job requirements would be excluded from hiring, and that Defendants "created an exclusionary and discriminatory

requirement for Plaintiff's position after [she] was hired and after [she] disclosed [her] disability." (Id. at ¶¶ 176-179).

In seeking dismissal of this claim, Defendants have erroneously construed Plaintiff's allegations as asserting either a "systemic disparate treatment" claim or a "systemic disparate impact" claim. Neither appears to be implicated. Whereas systemic discrimination claims implicate discriminatory conduct toward a protected group as a whole, Plaintiff's allegations plainly allege discriminatory treatment of her alone. Indeed, as Defendants acknowledge in their summary of Plaintiff's allegations, Plaintiff alleges that Defendants used "qualification standards and/or selection criteria" that "screened Plaintiff our from [her] job *ex post facto*." (ECF No. 46, at p. 7, citing ECF No. 43, Amended Complaint, at ¶ 178). In other words, Plaintiff is alleging that Defendants altered the qualification standards for Plaintiff's job only after Plaintiff asserted a disability, with the intent of screening her out of the job, individually.

Because the premise of Defendants' arguments is misplaced, their motion to dismiss Count II of the amended complaint will be denied.

### B.   Count IV – Fourteenth Amendment Due Process Claim

Plaintiff generally claims that Defendants' course of conduct violated her federal rights, "as protected by the Fourteenth Amendment to the Constitution of the United States and by other federal law;" deprived her of "rights, privileges, or immunities secured or protected by the Constitution of the United States and federal law;" and "created an inability of Plaintiff to find adequate and competent counsel." (ECF No. 43, at ¶¶ 195-197). Defendants have appropriately construed Plaintiff's allegations as claiming violations of her procedural due process rights.[5]

---

[5] In so doing, Defendants correctly note that Plaintiff's allegations cannot support a violation of substantive due process, because the Third Circuit has held that a "public employee's interest in continued employment with a

6

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." Stelle v. Cicchi, 855 F.3d 494, 501 (3d Cir. 2017). "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978). "In constitutional parlance, the claimant must have a legitimate claim of an entitlement" such that "a claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding." Carter v. City of Phila., 989 F.2d 117, 120 (3d Cir. 1993). The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of life, liberty, or a property interest. Washington v. Lehigh Cty. Dist. Attorney's Off., 2021 WL 2108985, at *6 (E.D. Pa. May 25, 2021). In order to establish a claim for a violation of procedural due process, a plaintiff "must establish both a deprivation of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and the absence of procedures that "provide due process of law." In re Energy Future Holdings Corp. 949 F.3d 806, 822 (3d Cir. 2020). Here, the only apparent property interest at issue is Plaintiff's employment with Defendants.

To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972). It is well-settled that an at-will employee does not have a legitimate entitlement to continued employment because she serves solely at the pleasure of her employer. Chabal v. Reagan, 841

---

governmental employer is not so "fundamental" as to be protected by substantive due process." Nicholas v.

F.2d 1216, 1223 (3d Cir.1988). Therefore, once a court determines that a public employee "held [her] position at the will and pleasure of the [governmental entity]," such a finding "necessarily establishes that [the employee] had no property interest" in the job sufficient to trigger due process concerns. Bishop v. Wood, 426 U.S. 341, 346 n. 8 (1976) (internal quotations omitted); see also Robertson v. Fiore, 62 F.3d 596, 601 (3d Cir.1995) (per curiam) (holding that an at-will employee "lacks a protected property interest in his position within the meaning of the Fourteenth Amendment").

Whether such a property interest exists is a matter of state law. Brown v. Trench, 787 F.2d 167, 170 (3d Cir.1986).; see also Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir.1997). ("State law creates the property rights protected by the Fourteenth Amendment."). Here, under controlling Pennsylvania law, a "public employee takes his job subject to the possibility of summary removal by the employing authority. He is essentially an employee-at-will." Scott v. Phila. Parking Auth., 402 Pa. 151, 166 A.2d 278, 280 (1960); see also Rank v. Twp. of Annville, 163 Pa.Cmwlth. 492, 641 A.2d 667, 670 (1994). In other words, a public employee in Pennsylvania generally serves at the pleasure of her employer and thus has no legitimate entitlement to continued employment, unless a legitimate entitlement can be shown.

In Pennsylvania, legitimate entitlement to continued employment can derive from several sources, including a state civil service statute, state constitutional provisions, or other guarantees of job security like a collective bargaining agreement or employment contract. See Carter v. City of Phila., 989 F.2d 117, 120 (3d Cir. 1993) ("a claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding"); Toth v. Bethel Twp., 268 F.Supp.3d 725, 731 (E.D. Pa. 2017) ("In

---

Pennsylvania State Univ., 227 F.3d 133, 142 (3d. Cir. 2000).

Pennsylvania, [a] governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute").

Here, Plaintiff alleges, generally, that she "was hired under a two-year contract…" (ECF No. 43, at ¶ 145), and makes references to a collective bargaining agreement that was apparently cited by Iadeluca in connection with the meeting of June 9, 2021, that resulted in Plaintiff's termination (Id. at ¶¶ 107-109). Though no specific allegations are offered with regard to the terms of either the alleged contract or collective bargaining agreement, these allegations are sufficient to, at least, raise the prospect of a legitimate expectation of employment that may give rise to due process concerns. Plaintiff will be given the opportunity to amend her complaint to specifically address the application and terms of these documents, if they, in fact, exist.

In the event Plaintiff is able to establish that she had a legitimate entitlement to her job, through either a contract or a collective bargaining agreement, or both, she must still establish the absence of procedures that provide the due process of law. In re Energy Future Holdings Corp., 949 F.3d 806, 822 (3d Cir. 2020).

Specifically, the Supreme Court has held that a public employee with a property interest in his or her employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). "All the process that is due is provided by a predetermination opportunity to respond, coupled with post-termination administrative procedures." Id. at 547-48. Plaintiff, as a government employee, was entitled to these due process rights.

Here, it is unclear from Plaintiff's allegations to what extent these rights were upheld.

Though Plaintiff makes reference to a pretermination meeting on June 9, 2021, she fails to indicate whether she was present at the meeting, the process provided at the meeting, the content of the meeting, or any post-termination procedures that may have been offered. Without allegations providing such information, the Court is unable to determine whether Plaintiff can establish that her due process rights were violated. Because of her *pro se* status, Plaintiff will be given the opportunity to amend her claim to provide such allegations, to the extent she is able.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment due process claim will be denied, without prejudice.

### C. Count V – "Conspiracy Against Rights"

In his September 30, 2022, Memorandum Opinion [ECF No. 36], Circuit Judge Fisher specified that Plaintiff was granted leave to amend her conspiracy claim "to allege facts showing the conspiracy was motivated by discriminatory animus against disabled people or members of some other identifiable class." (Id. at p. 11). Plaintiff has failed to do so. In fact, the only substantive modification to Plaintiff's conspiracy claim is the somewhat vague allegation that Defendants conspired to violate her "right to equal protection under the law (by monopolizing the best attorneys, it ensures victims of tortious conduct cannot hire those attorneys in claims against Defendants)." This non-specific, conclusory allegation falls far short of Judge Fisher's mandate. Thus, Plaintiff's conspiracy claim will be dismissed, with prejudice.

An appropriate Order follows.